Clint SCHWINGLER, Respondent,

v.

Robert DOEBEL, et al., Defendants,

Earl McQuiston and Savage Enterprises, Inc., Appellants.

No. 51123.

Supreme Court of Minnesota.

Aug. 28, 1981.

Fred Allen and Associates, Minneapolis, for defendants.

Thomas M. Loftus, Prior Lake, for McQuiston and Savage Enterprises, Inc.

Streefland & Daly and Russell I. Streefland, Burnsville, for respondent.

AMDAHL, Justice.

Plaintiff brought this action against Robert Doebel for assault and against defend-

ants Savage Enterprises, Inc., owner of Earl and Dorothy's Tavern, and Earl McQuiston, sole shareholder of the corporation and the bartender on the evening of the assault, claiming that they were liable for Doebel's tortious conduct either because he was their employee or because they had failed to maintain a safe and orderly place of business. Plaintiff obtained a default judgment against Doebel for $11,041.74 in April 1978 and, following trial to the court of the action against the remaining defendants, was awarded the same amount against them on the bases both of vicarious liability and breach of their duty to maintain a reasonably safe place for their business patrons. Although we have reviewed the evidence in the light most favorable to the trial court's determination we have concluded that it does not justify imposition of liability upon the tavern owner and operator.

The testimony of plaintiff, McQuiston, and Doebel, who appeared as a witness for the other defendants, is in sharp conflict. According to plaintiff, he entered the tavern shortly after midnight July 18, 1975, and sat between a couple at one end of the L-shaped bar. Doebel was then standing near a bartender's stool at that end of the bar, and plaintiff assumed Doebel was an employee when he served the three beers for which the couple paid. Doebel again waited on the three when plaintiff ordered a second round. After serving the couple, he suddenly threw the beer in the glass he brought plaintiff in plaintiff's face. Plaintiff tossed the remaining beer in his first glass at Doebel and left the tavern immediately, telling his companions that he would not buy beer there. McQuiston was working at the bar about five feet away when this incident occurred.

Plaintiff then crossed the street and entered his parked automobile. As he started it, Doebel approached, thrust his arm through the window on the driver's side of the vehicle, and struck plaintiff several times in the side of the head. Doebel then opened the door and attempted to drag plaintiff from the automobile, striking him on the shoulder and left arm. When he could not remove plaintiff from the automobile, Doebel then cracked the steering wheel and broke some switches on the dash. Plaintiff was bruised and dazed as a result of the assault, subsequently sought medical attention, and still suffers headaches. He testified that Doebel was intoxicated that evening and generally was "known for trouble."

Doebel testified that he was not working for the other defendants but had served plaintiff a beer because McQuiston, the only bartender, was busy and plaintiff was impatient. He said that some of the second beer was accidentally spilled on plaintiff's shirt whereupon plaintiff threw the rest of it in Doebel's face and subsequently "antagonized" him further before leaving. Doebel denied following plaintiff from the tavern and said they met across the street and plaintiff then called him bad names and hit him, in response to which Doebel walked plaintiff to his automobile and slapped him. He said also that plaintiff was intoxicated and had started fights on other occasions.

McQuiston testified that Doebel had been employed as a bartender in 1970 but not since then and was not employed that evening. McQuiston admitted that he knew Doebel had been convicted of aggravated assault and was quick tempered. He also said that Doebel had never been violent while in the tavern and was not intoxicated that evening. He knew that Doebel had occasionally taken drinks while employed and that after his employment terminated he would occasionally go behind the bar to make himself drinks. He denied seeing Doebel serve himself or others that evening, although he stated that it was possible Doebel might "grab a beer." McQuiston said he heard no loud remarks by either Doebel or plaintiff, did not see the beer-throwing incident, did not see plaintiff leave the building, and knew nothing that evening about the assault across the street. A customer who had sat at the bar much of the evening said she did not see or hear any confrontation between plaintiff and Doebel.

A disinterested witness, Sharon Conopacki, who was seated in a parked automobile near the tavern, corroborated plaintiff's testimony concerning the assault outside the tavern. She testified that Doebel emerged from the tavern a few minutes after plaintiff had done so and that plaintiff had entered and started his automobile when Doebel approached and began striking him. Another witness who had been in plaintiff's company until 10:45 p. m. that evening said that plaintiff had nothing to drink during that time.

■ 1. The trial court found that Doebel had waited on plaintiff with the knowledge and acquiescence of the other defendants and concluded that they were vicariously liable for Doebel's acts. Although it is clear that the underlying finding has sufficient evidentiary support, we are unable to agree that it furnishes grounds for imposing liability on McQuiston and the tavern owner for Doebel's tortious conduct outside the tavern. Doebel, while serving customers with the knowledge and acquiescence of McQuiston, was in effect the unpaid employee of the other defendants and was acting within the scope of his employment when he threw the beer at plaintiff; thus, had that incident resulted in compensable harm, the other defendants would have been vicariously liable for it under the principle stated in *Restatement (Second) of Agency*, § 245 (1957):

> A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of a servant.

Plaintiff's own testimony establishes, however, that following that incident he promptly left the tavern. His testimony and that of Ms. Conopacki establish that Doebel did not follow plaintiff instantly but instead came from the tavern and crossed the street a few minutes later. Doebel's testimony makes it clear that the only reason for the assault on plaintiff as he sat in his automobile was Doebel's deep personal animosity toward plaintiff. It is true that a master's liability for a servant's intentional torts is not avoided by the fact that the servant acts *in part* because of a personal motive. See *Restatement (Second) of Agency*, § 245, Comment *f* (1957). But it is clear that the assault was based wholly on a personal motive in this case, and we are required to conclude that Doebel's assault on plaintiff as he sat in his automobile was not in the scope of his volunteer employment and that it was "unexpectable in view of the duties" he had been allowed to perform in the tavern. Consequently, the circumstances do not warrant imposition of liability on the corporation and McQuiston as Doebel's employer.

■ 2. Nor can we uphold imposition of liability on McQuiston and the defendant corporation on the ground that they breached their duty to maintain safety and order for the protection of the tavern's patrons. A tavern owner and operator have that duty, but a prerequisite to its existence is the foreseeability of injury to a patron by reason of the intoxication or vicious propensities of another individual permitted to frequent the premises. See *Devine v. McLain*, 306 N.W.2d 827 (Minn.1981); *Filas v. Daher*, 300 Minn. 137, 218 N.W.2d 467 (1974), *Swanson v. The Dugout, Inc.*, 256 Minn. 371, 98 N.W.2d 213 (1959). In this case we are compelled to conclude that the element of foreseeability is lacking. While McQuiston admitted that he knew Doebel had a quick temper and had at some point (undisclosed in the record) been convicted of aggravated assault, his testimony that Doebel had never behaved improperly at the tavern either as an employee or as a customer was uncontradicted and there was no evidence that Doebel was obviously intoxicated, loud, argumentative, or belligerent prior to the beer-throwing incident. The incident thus was not foreseeable.

Nor were the subsequent events foreseeable. If plaintiff had remained in the tavern, the incident could well have put McQuiston on notice that Doebel might commit a more violent assault and thus have placed upon the bartender the duty of

requiring Doebel to leave. In fact, however, plaintiff did leave the tavern after the beer-throwing incident, relieving McQuiston of the necessity of protecting him by ejecting Doebel. There was no evidence of a verbal exchange in which Doebel threatened to injure plaintiff, and plaintiff's immediate departure to all appearances ended the confrontation Doebel had initiated. Thus, the subsequent violent attack on plaintiff was in fact foreseeable by no one except Doebel himself, and this would have been true even if the assault had occurred in the tavern's parking lot instead of across the street. The evidence is thus insufficient to support the finding that McQuiston and the defendant corporation breached their duty to maintain safety and order in the tavern.

We reverse the decision of the trial court and remand for entry of judgment in favor of defendants McQuiston and Savage Enterprises, Inc.

Reversed.