[Civ. No. 20761.   First Dist., Div. Two.   June 14, 1963.]

VIRGINIA SLAWINSKI et al., Plaintiffs and Appellants, v. ROBERT MOCETTINI et al., Defendants and Respondents.

Bergen Van Brunt for Plaintiffs and Appellants.

Lacey, Holbrook & Meyenberg and Richard E. Holbrook for Defendants and Respondents.

KAUFMAN, P. J.—This is an action for wrongful death brought by the surviving widow and minor children of Stanley Slawinski, who died as a result of a gunshot wound inflicted by one Herbert L. Wilson[1] in a tavern and restaurant owned by the respondents, Robert and Roby Mocettini. The complaint alleged that the respondents failed to properly supervise and control their premises so as to prevent the attack and for harboring Wilson.

A jury trial resulted in a verdict in favor of the appellants in the amount of $169,000. Thereafter, the trial court granted the respondents' motion for a new trial on grounds of insufficiency of the evidence and misconduct of the plaintiffs' attorney. This appeal is from the order granting the new trial.

The record reveals the following facts: for many years, the respondents operated their establishment known as Bob's Café on the east side of the old Highway 101 in Greenfield, Cali-

[1]Herbert Wilson, although named in the complaint, was not a defendant in this action. The briefs allege that he is serving sentence for first degree murder of Slawinski.

fornia. Bob's Café consists of a bar with a separate card room at the front of the premises, with a completely partitioned kitchen and dining room area at the rear. On August 8, 1959, Slawinski came into Bob's Café about 11 a.m. and drank short beers most of the day. He ate lunch there and spent the afternoon drinking beer. Several eyewitnesses testified that Slawinski did not appear to be intoxicated but his blood alcohol content of .213 at the time of death indicated otherwise. Wilson, a regular patron of Bob's, came in for a beer about 11 a.m. and did not return until about 6 p.m. when he had another beer and sat at the opposite end of the bar from the deceased. Later, Wilson sat down next to Slawinski.

Throughout the afternoon and evening, there were between 12 and 20 patrons in Bob's Café, several of them feeling very good. There was conflicting evidence as to whether the amount of noise and confusion was more than normal for a Saturday afternoon and evening. However, it is uncontroverted that the conversations between the deceased and Wilson, who apparently had not met before, were normal and friendly. No one was aware of any altercation between Slawinski and Wilson until about 8 p.m. when, for some unknown reason, Slawinski backhanded Wilson off the bar stool and everyone heard the two men fall to the floor. They scuffled on the floor for about 20 seconds and were quickly separated by two other patrons, Jesse Robertson and Chester Norman. As soon as they had been separated, Wilson left without saying a word to anyone. There is conflicting testimony as to whether he looked angry and rushed out, or walked out in a normal manner. When Slawinski got up and sat down on his stool, the bartender, Nalley, asked him: "Stanley, what do you think you are doing?" Slawinski indicated that Wilson had called him a dirty name and the bartender replied: "I don't blame you for that, but if you're going to fight, get outside." Slawinski said: "O.K." and sat down. Robert Mocettini, who had been working in the kitchen during the incident, came in and briefly spoke to the bartender and Slawinski. He "figured everything was all over with" and returned to the kitchen.

About 30 minutes later, Wilson reentered the bar with a gun in his hand and fired 5 or 6 shots at point blank range as he walked towards Slawinski. The police arrived about 15 minutes later and arrested Wilson, who was intoxicated. Slawinski died at 9:47 p.m.

In granting the motion for a new trial, the court specifically

ruled that in its opinion, there was no probative evidence proving or tending to prove that the respondents should have known of the dangerous propensities of Wilson and that he would cause bodily harm to the decedent. Appellants here argue that the trial court abused its discretion in granting the motion for a new trial as there was ample evidence to sustain the verdict. We cannot agree. Appellants concede that as there is no cause of action for the negligent furnishing of intoxicating liquor (*Cole* v. *Rush,* 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137]) in this state, their complaint is based wholly on the failure of the respondents to properly control and police the premises and prevent Wilson from harming the decedent.

The rules of liability in cases of this sort are well settled. The proprietor of a place where intoxicating liquors are dispensed owes a duty of exercising reasonable care to protect his patrons from injury at the hands of fellow guests. Any guest of such a place has the right to assume that he is in an orderly house and that the proprietor or his employees will exercise reasonable care in maintaining appropriate decorum (*Thomas* v. *Bruza,* 151 Cal.App.2d 150 [311 P.2d 128]). While the proprietor is under a duty to protect his patrons from injury, annoyance and mistreatment, he is not an insurer of their safety. His obligation is limited to the exercise of reasonable care and he is liable only when he is negligent in receiving or harboring guests of known violent or vicious propensities (*Kingen* v. *Weyant,* 148 Cal.App.2d 656 [307 P.2d 369]).

A review of the authorities in our own and other jurisdictions indicates that the duty of a tavern keeper to protect a patron from injury by another arises only when one or more of the following circumstances exists: (1) A tavern keeper allowed a person on the premises who has a known propensity for fighting; (2) the tavern keeper allowed a person to remain on the premises whose conduct had become obstreperous and aggressive to such a degree the tavern keeper knew or ought to have known he endangered others; (3) the tavern keeper had been warned of danger from an obstreperous patron and failed to take suitable measures for the protection of others; (4) the tavern keeper failed to stop a fight as soon as possible after it started; (5) the tavern keeper failed to provide a staff adequate to police the premises; and (6) the tavern keeper tolerated disorderly conditions (*Nevin* v. *Carlasco* (1961) 139 Mont. 512 [365 P.2d

637]; see cases collected in 70 A.L.R.2d 628; 30 Am.Jur. § 523, p. 823; 27 Cal.Jur.2d, Innkeepers, §§ 25-27).

While the standard of care is that of an ordinarily prudent person, yet it must be realized that reasonable care is a relative term in that the amount of care must be .commensurate with the risks and dangers attending the activity being pursued. It is a subject of common knowledge that the consumption of a procession of drinks of intoxicating liquors produces a variety of reactions in the deportment of human beings, the development of which emotions the tavern keeper should be reasonably alert to detect. It is the policy of the law, both statutory and decisional, to protect the public from the social consequences of intoxicating liquor. There is perhaps no field of business activity more hedged about with state and municipal laws and regulations designed to protect the public. When a person engaged in that business permits persons to gather upon his premises for profit, he must recognize the risks which flow from the nature of the business. The test of whether the duty of reasonable care is discharged is the probability or foreseeability of injury to a plaintiff.

In the instant case, although there was conflicting evidence as to whether Wilson had a reputation as a hot tempered person, it was uncontroverted that the respondents and their employees were not aware of this fact and had never experienced any trouble with Wilson. There was no evidence that Wilson had a known propensity for fighting. Thus, respondents' duty toward the deceased depended upon whether they properly or negligently evaluated the situation after the first incident between Wilson and Slawinski. The evidence indicated that no one was aware of any disagreement between Wilson and the decedent until the two men were scuffling on the floor. This initial altercation was immediately stopped and Wilson left. At this time, neither of the respondents was present in the bar room portion of the premises. There is no evidence that respondents had any way of knowing that Wilson would return.

It was for the jury to determine whether or not, under these circumstances, the respondents and their employees tolerated disorderly conduct or took sufficient action; whether they should have made further inquiry into the situation and should have known that Wilson would return; or whether they properly assumed that the matter had ended. The bartender testified that when his attention was called to the fight by the noise of the two men falling to the floor, he immediately

walked to the west end of the bar and flicked on a switch to turn on the red light on the roof of the bar to warn the police of trouble.[2] After he saw the two men had been separated and Wilson was walking out, he turned off the red light and talked to Slawinski, as indicated above. There is conflicting evidence as to how many patrons left the bar, their reasons for doing so, and how many others remained.

Considering the state of the evidence, we think there is no question that the trial court properly granted the motion for a new trial. The rules on appeal from an order granting a new trial are well settled. ■ All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance.

■ In considering the sufficiency of the evidence on the hearing of a motion for a new trial, it is the exclusive province of the trial court to judge the credibility of witnesses, to determine the probative force of testimony, and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial. ■ It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. ■ Error is not presumed and the burden is upon the appellants herein to affirmatively show it is present in the record or a manifest and unmistakable abuse of discretion (*Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687] at p. 434). Appellants have not met this burden.

As we have concluded the trial court correctly granted the motion for a new trial on the basis of the insufficiency of the evidence, it is not necessary for us to comment on the other ground cited in the order.

Order granting motion for new trial is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied July 2, 1963, and appellants' petition for a hearing by the Supreme Court was denied August 7, 1963.

---

[2]The record indicates that the police station was across the highway from the cafe. There was considerable conflicting evidence as to the use and efficacy of the red light.