**Patrick M. QUINN, Respondent,**

**Robert G. Quinn, Respondent,**

v.

**WINKEL'S, INC., d. b. a. McDonough's, a. k. a. Fran McDonough's, Appellant,**

**Francis J. McDonough, et al., Defendants.**

**Nos. 47985, 47986.**

Supreme Court of Minnesota.

May 4, 1979.

Rehearing Denied June 12, 1979.

Jardine, Logan & O'Brien and Graham Heikes, St. Paul, for appellant.

Nilva & Frisch and Allen I. Nilva, St. Paul, for respondents.

Heard before KELLY, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This appeal arises out of a shooting at a bar. Both plaintiffs were injured in the shooting and sued their assailant and the corporation that owned the bar, the defendant herein, as well as other related parties who were later dropped from the case. At trial the jury found for the plaintiffs. On appeal the defendant contends that the plaintiffs failed to establish a prima facie case of negligence, that defendant's request for a *Schwartz* hearing was improperly denied, and that certain rulings on admissibility of evidence and jury instructions were in error. We affirm.

About a week before June 3, 1975, Robert Quinn was involved in a fight with Gilbert Verdeja at a private party. On June 3, at about 4:30 or 5:00 p. m., Robert entered McDonough's Bar, where he encountered David Verdeja, a brother or cousin of Gilbert's. David Verdeja made a phone call, exchanged a few words with Robert Quinn, and then left. Later, at about 5:30 p. m., David Verdeja returned with his brother Carlos and several unidentified individuals. A confrontation followed during which Carlos Verdeja shot and wounded Robert Quinn and his brother Patrick. Mike Tschida, the

bartender on duty at McDonough's, hid on the floor behind the bar when Carlos Verdeja drew a gun. Fran McDonough, the manager, and David Kemper, an off-duty bartender, were socializing with friends in another room of the bar and heard nothing until the shooting began. The police were not called until the incident was over.

Robert and Patrick thereafter sued Winkel's, Inc., which operated the bar, as well as McDonough, the bar bonding company, and Carlos Verdeja, whose whereabouts have been unknown since the shooting.

At trial plaintiffs alleged that the defendant, Winkel's, knew or should have known of the aggressive nature of Carlos Verdeja who frequented the bar, and should have taken steps to prevent the attack. McDonough and the bar bonding company were dropped as defendants at the close of the presentation of evidence. The jury found Robert Quinn 25 percent negligent and Winkel's 75 percent negligent as to Robert's injuries and assessed his damages at $65,000. The jury found Winkel's 100 percent negligent as to Patrick's injuries and assessed his damages at $8,000. Defendant Winkel's moved for judgment n. o. v. and alternatively for a new trial. Both motions were denied by the trial court and judgment was entered. The defendant Winkel's, Inc. appeals.

■ Defendant-appellant Winkel's first argues that he is entitled to judgment n. o. v. because plaintiffs failed to establish a prima facie case. Defendant bases his argument primarily upon *Filas v. Daher,* 300 Minn. 137, 218 N.W.2d 467 (1974). In *Filas* the court approved a judgment n. o. v. for the defendant. In that case we assumed, arguendo, that plaintiff was correct in his disputed allegation that the disruption lasted 7 or 8 minutes before plaintiff was injured. We held, however, that the defendant proprietors still did not have sufficient warning to prevent the injury, which occurred when the wife of one of the scufflers suddenly hit the plaintiff on the head with a bottle. The wife's actions in *Filas* were separate from the scuffle and could not have been anticipated as part of the scuffle.

Therefore the time factor was irrelevant. Plaintiffs in the present case produced evidence that the violent nature of the Verdejas was known to Winkel's agents prior to the shooting and prior to their entering the bar. Their actions could not be described as unanticipated, even if the minimum time before the shooting given by defense witnesses is accepted. In *Mettling v. Mulligan,* 303 Minn. 8, 225 N.W.2d 825 (1975), an individual, who was known to the bar proprietors to be pugnacious and troublesome, suddenly hit the plaintiff. After losing at trial, defendant was denied judgment n. o. v. because, this court stated, the mere presence of the assailant on the premises presented a foreseeable risk of harm to other patrons.

■ Defendant's argument that the shooting arose out of a fight which occurred outside the bar is reflected in the jury's finding of 25 percent negligence with respect to Robert Quinn. This does not in itself support a judgment n. o. v., however, unless the violence could not have been anticipated or prevented by the defendant. For the same reasons defendant's argument that judgment n. o. v. should be granted because the assailants were not customers is invalid. The duty is dependent upon the probability or foreseeability of injury to the plaintiff. See *Connolly v. Nicollet Hotel,* 254 Minn. 373, 95 N.W.2d 657 (1959). Plaintiffs produced reputation testimony about the violent nature of Carlos and David Verdeja as well as evidence that McDonough was aware of this but would not bar them from the premises. Also evidence of David Verdeja's fights on the premises was presented. Therefore the jury could have found that violence was foreseeable whenever Carlos or David Verdeja was on the premises. There can be little doubt that either barring the Verdejas from the premises or calling the police immediately upon their arrival could have prevented plaintiffs' injuries.

■ Defendant next argues that the trial court abused its discretion in refusing to hold a *Schwartz* hearing. See *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn.

325, 104 N.W.2d 301 (1960). In a *Schwartz* hearing the trial court questions the jurors under oath, on the record, with counsel present. The hearing is designed to disclose evidence of jury misconduct while protecting jurors from harassment by parties or their investigators outside the courtroom. See *Schwartz, supra; Olberg v. Minneapolis Gas Co.*, 291 Minn. 334, 191 N.W.2d 418 (1971). *Schwartz* hearings are to be liberally granted within the court's discretion if the moving party has averred sufficient facts suggesting jury misconduct.

■ Defendant alleges that prior to Francis McDonough's being dismissed as a defendant, McDonough was phoned by an unidentified man who stated that if McDonough would alter his testimony to favor the plaintiffs, McDonough's personal attorney fees would be paid by plaintiff Pat Quinn. Defendant argues that this raises a suspicion of jury tampering. The trial court questioned the jurors as a group, not under oath, as to whether anyone had attempted to contact any of them about the trial. There was no indication from any of the jurors that this had occurred and the trial court thereafter refused to hold a full *Schwartz* hearing. The allegations of the defendant in this case would not appear to suggest jury misconduct or attempted jury tampering without more. Instead, the factual allegations suggest that witness tampering was attempted. Although the possibility of jury tampering exists, this is always true. In view of the limited scope of the defendant's allegations, the trial court appears to have taken sufficient precautions by questioning the jurors as a group, on the record.

■ As to the conduct of the trial itself, defendant argues that testimony of prior misconduct by the Verdeja family in general and by Carlos and David Verdeja in particular should not have been allowed into evidence. Defendant believes that such evidence was only relevant to whether the Verdeja brothers should have been excluded from the bar and defendant assumes that the assailants would have entered the bar to shoot the Quinns even if they had been previously excluded. But if the Verdeja brothers had been barred, the bartender might have been on notice to call the police immediately when they entered or might have reacted more quickly to call the police when they became belligerent. Moreover, the possibility exists that they may not have entered the bar knowing that their presence alone might bring the police before they had accomplished their purpose. Finally, the evidence was relevant to the defendant's knowledge of the Verdeja brothers' violent propensities. Thus, the evidence meets at least the minimal requirements of relevancy.

Because more than one Verdeja was involved, testimony was often confusing as to whether it referred to David and Carlos Verdeja or the family in general. Because the witnesses often thought of the individuals in terms of the family they belonged to, the problems that defendant complains of could not easily be avoided. Defendant was free on cross-examination to show where an opinion was based only on prejudice toward the family rather than an opinion of the individual.

■ Defendant also objected that plaintiffs were leading their witnesses. The trial court agreed but considered leading necessary to speed up the lengthy trial and nonprejudicial because the testimony was otherwise admissible and relevant. A trial court should not be reversed absent a clear abuse of discretion. *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977). There is no indication of such an abuse in this case.

■ The trial court prevented defendant from cross-examining a witness as to how quickly one could fire 7 shots from a .45 calibre automatic. At that time all the testimony indicated that the shots had been fired over several minutes—not in a rapid-fire sequence. Thus there was no basis for the testimony and the court was correct in excluding it. The attorney did not indicate to the court that defense testimony would suggest that the shots had been fired quickly.

Defendant contends that admitting evidence that the bar manager became intoxicated and belligerently ordered the police out of his establishment approximately 3 hours after the shooting was irrelevant and prejudicial. Because of its limited relevancy and the possibility of prejudice, this court might not have allowed such testimony into evidence in a similar situation. We cannot say, however, that the trial court exceeded its discretion in admitting the evidence; and in view of defendant's excellent rebuttal, the failure to exclude the evidence would be harmless in any case.

Defendant argues that the trial court erred in not giving a jury instruction on the emergency doctrine.[1] Prior to the gun being drawn, however, there was no emergency in the bar. Instead it was only an altercation. A barkeeper is required to react reasonably to a situation that is common and should not be allowed the protection of the emergency doctrine.

We have examined defendant's other objections to the conduct of the trial below and find them to be without merit.

Affirmed.

---

1. The suggested instruction read: "You are instructed that a person confronted with an emergency through no negligence of his own who, in an attempt to avoid the danger, does not choose the best or safest way, is not negligent because of such choice unless the choice was so hazardous that a reasonable person would not have made it under like circumstances."