Dale **DEVINE**, et al., Appellants,

v.

Darlene **McLAIN**, Respondent,

Howard Guckenberg, d. b. a. Al's Bar, Respondent.

No. 50715.

Supreme Court of Minnesota.

June 19, 1981.

Rehearing Denied Aug. 5, 1981.

Christian & Gross and Loren Gross, Minneapolis, for appellants.

Philip Marron, Minneapolis, for McLain.

Sahr, Kunert & Tambornino, John L. Tambornino, and Roger T. Sahr, Minneapolis, for Guckenberg.

TODD, Justice.

Plaintiffs Dale Devine and Joyce Devine, husband and wife, brought this action against two defendants for personal injuries resulting from bullet wounds inflicted upon Dale Devine. Claims were made against Darlene McLain for assault and battery and against Howard Guckenberg, doing business as Al's Bar, for breach of a tavern operator's duty to maintain a safe and orderly place of business. Darlene McLain asserted a counterclaim against Dale Devine for assault and battery. The case was tried in Scott County District Court. Returning a special verdict, the jury found that Dale Devine did not assault Darlene McLain, that Darlene McLain did assault and batter Dale Devine, and that Al's Bar was negligent. The jury found Darlene McLain to be 60 percent at fault and Al's Bar to be 40 percent at fault for Dale Devine's injuries. Compensatory damages of $1,700,000 were awarded to Dale Devine, and damages of $500,000 were awarded to Joyce Devine for loss of support, services, and companionship.

By post-trial motion, Darlene McLain sought either a remittitur or a new trial on all issues. This motion was denied. Also by post-trial motion, Al's Bar sought to amend the jury's answers to interrogatories that found Al's Bar to be negligent and that found the bar's negligence to be a

direct cause of Dale Devine's injuries. The trial court granted this motion and ordered judgment notwithstanding the verdict for Dale Devine to recover nothing from Al's Bar, for Dale Devine to recover $1,700,000 from Darlene McLain, and for Joyce Devine to recover $250,000 from Darlene McLain.[1]

The Devines appealed the trial court's order granting the motion of Al's Bar for an amendment to the jury's answers contained in the special verdict. Darlene McLain sought review of both the judgment and the trial court's order that denied her motion for either a new trial or a remittitur. We affirm.

The principal issue in this case is whether Al's Bar breached a duty to protect its patrons.

The facts of this case are, for the most part, undisputed. On May 24, 1975, Dale Devine and his friend Bob Chard had five or six drinks at Kranz's Bar in Belle Plaine. Later, at 12:30 that Saturday afternoon, they entered Al's Bar, also in Belle Plaine. Eventually they were joined by three other friends, Bob Trost, Bob Hillstrom, and Bob Shaughnessy. Dale Devine and Bob Chard may have had as many as 20 drinks that day.

Darlene McLain left work at 2:15 that afternoon, went home, and later met her husband Bob McLain for a drink at Eischen's Bar in Belle Plaine. The McLains then went to Al's Bar for another drink. The McLains had recently moved into the Belle Plaine community. They had never before been in Al's Bar. The McLains had consumed approximately one beer when the following events occurred.

Bob Chard approached Darlene McLain while she was in Al's Bar, put his arm around her waist, and made some unknown remark. After an exchange of words with the McLains, Bob Chard returned to his group of friends. Several members of the group then made jeering remarks to the effect that they could "whip" Mr. McLain.

Dale Devine went to the restroom. When he walked out, according to Dale Devine's testimony, Bob McLain unexpectedly kicked him in the groin. Because Bob McLain died before trial, no other testimony was presented concerning who initiated the altercation.

Dale Devine struck Bob McLain two or three times, apparently ending the fight. Darlene McLain observed that her husband was being beaten and went to his aid by grabbing a chair to hit Dale Devine.

The testimony diverges at this point. According to Darlene McLain, Dale Devine took the chair away from her so she attacked him with her fists. She testified that Dale Devine then struck her, knocked her to the floor, and was about to hit her with the chair when the barmaid, Evelyn Ahrens, said, "Dale, don't do it."

Dale Devine testified that he grabbed the chair away from Darlene McLain and was about to hit her with it when Evelyn Ahrens cautioned him to put the chair down. He further testified that Darlene McLain then attacked him with her fists, and at that time, he pushed her to the floor.

The McLains left immediately after this fight. From the time the scuffle began until the time they left, no more than 5 or 6 minutes had elapsed. As Darlene McLain was leaving the bar, she said, "I will be back." Dale Devine claims not to have heard this statement. At one point in the trial, Evelyn Ahrens testified that the word "back" was all that she had heard. Evelyn Ahrens had given other testimony, however, at an earlier criminal proceeding arising out of the same event. Referring to that testimony, counsel for appellants asked the following question, and Evelyn Ahrens gave the following answer:

By Mr. Gross:
Q I will read once again. Did you hear the defendant say anything as she was leaving—the defendant was Mrs. McLain—Either they will be back, or I'll be back, or we'll be back. I don't know which one it was, but I heard the "back".

1. The trial court's order reduces the damages awarded to Joyce Devine from $500,000 to $250,000 without specifically ordering a remittitur or granting any motion to that effect. It is unclear whether this is a clerical error or the trial court intended to reduce the award.

A Yes.

Evelyn Ahrens was the only employee of Al's Bar who was working that afternoon. She did not call the police after the fight.

The McLains left the bar at about 3 o'clock in the afternoon. Approximately ½ hour later, Darlene McLain returned with a gun. She stood in the front doorway and shot Dale Devine three times.

Dale Devine was 36 years old at the time of the shooting. As a result of his wounds, he has become a partial quadraplegic, he has difficulty breathing with his chest muscles, and he no longer has bowel control. The injury required an operation on his prostate gland that resulted in loss of sexual function. After being hospitalized for 8 months, Dale Devine finally was able to return home. He requires home care 24 hours a day, which is being given to him by his wife Joyce Devine.

Appellants argue the jury verdict should be reinstated because the facts in this case indicate that Al's Bar breached its duty to maintain order and safety. Minnesota law imposes upon a tavern operator "the duty to see to it that a patron is not injured by vicious or drunken individuals whom he permits to frequent his establishment." *Klingbeil v. Truesdell*, 256 Minn. 360, 363, 98 N.W.2d 134, 138 (1959); *see* Minn.Stat. § 340.14(2) (1980) ("Every [tavern owner] shall be responsible for the conduct of his place of business for conditions of sobriety and order therein.")

■ When reviewing a judgment notwithstanding the verdict, this court must take the view of the evidence most favorable to the verdict. *See Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14–15 (Minn. 1979). Under this standard of review, we find no evidence from which the jury could have found that Al's Bar breached the tavern operator's duty of care.

The elements of a tavern operator's duty were expressed in *Evanish v. V.F.W. Post No. 2717*, 269 Minn. 209, 130 N.W.2d 331 (1964):

The duty owed a patron by the proprietor of a bar has been clearly delineated in this state. A proprietor is not liable for an injury inflicted by one patron against another unless, by some overt act or threat, the proprietor is put on notice of the offending patron's vicious or violent propensities, and having had an adequate opportunity to protect the injured party, the proprietor fails to take reasonable steps to do so.

*Id.* at 211, 130 N.W.2d at 332–33 (footnote omitted.) Foreseeability of injury to the plaintiff is the fourth factor upon which the tavern operator's duty is predicated. *See Quinn v. Winkel's, Inc.*, 279 N.W.2d 65, 68 (Minn.1979).

■ The foreseeability of injury required for the imposition of liability on a bar is normally found in the bar's knowledge of the dangerous propensities of the person inflicting the injury. *See Quinn*, 279 N.W.2d at 68–69. The *Quinn* case is illustrative of the way in which this element may be satisfied. According to the court "[p]laintiffs produced reputation testimony about the violent nature of [the assailants] as well as evidence that [the bar owner] was aware of this but would not bar them from the premises. Also evidence of [one of the assailant's] fights on the premises was presented." 279 N.W.2d at 68. The court in *Quinn* indicated that this was sufficient evidence to support the jury's conclusion that violence was foreseeable when the assailants were in the bar. *See* 279 N.W.2d at 68.

■ In this case there was no evidence from which the jury could have concluded that the actions of defendant McLain were foreseeable by the bar. The McLains had recently moved into the Belle Plaine community. They had never been in Al's Bar prior to the day plaintiff was shot. In short, there was nothing, except the fight that broke out between the McLains and one of the plaintiffs, to put the bar on notice that defendant McLain had violent tendencies. The fight ended, and the McLains left the bar. Although the bartender admitted hearing defendant Darlene McLain say something about returning to the bar as she left, this remark was not

sufficient to put the bar on notice that she intended to cause harm upon her return. Even if the police had been called, there is nothing to indicate that the shooting would have been prevented.

If liability were imposed on the bar in this case, without requiring that the harm which plaintiff Dale Devine suffered be foreseeable, the result would be the imposition of strict liability. No other jurisdiction has gone this far. See *Slawinski v. Mocettini*, 217 Cal.App.2d 192, 31 Cal.Rptr. 613 (1963); *Schwartz v. Cohen*, 204 Misc. 142, 119 N.Y.S.2d 124 (1953); *Popovich v. Pechkurow*, 145 N.E.2d 550 (Ohio Ct.App. 1956). This case is analogous to *Filas v. Daher*, 300 Minn. 137, 218 N.W.2d 467 (1974), in which we refused to impose liability on a bar because the evidence was insufficient to show that the bar had knowledge of the dangerous propensities of the person causing the harm. Reasonable minds could not differ as to the proper outcome in this case. See *Fisher v. Edberg*, 287 Minn. 105, 110, 176 N.W.2d 897, 900 (1970).

Because of our conclusion that the bar's liability was not established, we need not reach the other errors alleged by appellants. The errors alleged by respondent Darlene McLain are without merit. The trial court is affirmed but instructed to enter a proper order remitting or upholding the damages awarded by the jury to Mrs. Devine.

Affirmed with instructions.

YETKA, Justice (dissenting).

I agree with the majority opinion that the principal issue in this case is whether Al's Bar breached a duty to protect its patrons; to put it even more specifically, whether the act was a foreseeable event in view of the specific acts which took place in Al's Bar that afternoon. The majority states that in this case there is no evidence from which a jury could have concluded that the actions of the defendant McLain were foreseeable by the bar. I dispute this statement for the following reasons:

1. The McLains were new residents of Belle Plaine. The bartender admitted in testimony that she was "leery" of the McLains when they entered the bar and feared there was a possibility of trouble.

2. As soon as the McLains had ordered drinks and paid for them, they complained they were shortchanged and the bartender corrected the matter.

3. Mrs. McLain was scantily and provocatively dressed.

4. The intense rage expressed on the part of Mrs. McLain when she swung a chair at the plaintiff indicated that she was totally out of control.

5. The majority opinion admits that the plaintiff and his friends could have had as many as 20 drinks that day. They were obviously intoxicated and should have been thrown out of the establishment. The owner himself indicated that, as the events had been described to him, he would have removed Mr. Devine and his friends from the bar if he had been present; yet, his bartender did nothing about it.

6. Mrs. McLain made a definite threat at the door when she and her husband were leaving.

Thus, what did occur was completely foreseeable under the circumstances. Is it unreasonable for a bartender, when that bartender has witnessed at least two assaults and possibly crimes being committed, to call the police and seek aid? I think not.

Further, appellant, in his brief, mentions seven specific steps that could or should have been taken, which I reiterate here:

1. Mrs. Ahrens could have ejected Chard and Devine and their friends before the fight between Devine and Mrs. McLain. There were threats being made by someone in that group.

2. Once the fight began she could have taken a more active part in breaking it up, letting the parties know that such conduct would not be tolerated.

3. She could have called the police even before the McLains left to determine who had been at fault and to be certain that all disorderly persons were removed and order restored.

4. Once she heard the threat that Darlene was "coming back" she could have called the police reporting the fight and the following threat or she could have warned Dale.

5. She could have ejected Dale and his friends after hearing the threat so there would have been no one for Mrs. McLain to come back to.

6. She could have locked up the bar and sent everyone home allowing minds to sober and tempers to cool.

7. She could have called Howard Guckenberg and sought his advice as to her next move.

Accordingly, I would reverse and remand for a new trial.

SCOTT, Justice (dissenting).

I agree with the dissent of Justice Yetka. The facts of this case are completely distinguishable from *Filas v. Daher*, 300 Minn. 137, 218 N.W.2d 467 (1974).

WAHL, Justice (dissenting).

I join in the dissent of Justice Yetka.

SHERAN, Chief Justice (dissenting).

I join in the dissent of Justice Yetka.