Kathleen McCLINTOCK, Appellant,

v.

ROGER'S CABLESYSTEMS OF MINNE-APOLIS LIMITED PARTNERSHIP, et al., Jeffrey Charette, Respondents.

No. C9–91–753.

Court of Appeals of Minnesota.

Dec. 17, 1991.

David A. Singer, David A. Singer, Ltd., St. Louis Park, for appellant.

James F. Dunn, James F. Dunn & Associates, P.A., St. Paul, for respondents.

LAMP, Phillip Marron, Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Kathleen McClintock sought to hold respondents, Rogers Cable and Atrex, civilly liable for her injuries sustained in a criminal attack by Jeffrey Charette. The trial court granted summary judgment for respondents holding that the respondents did not owe appellant any affirmative duty to protect her from the attack in that the specific circumstances of the attack were not reasonably foreseeable. McClintock appeals. We affirm the trial court's decision on slightly different grounds.

## FACTS

Appellant, Kathleen McClintock, had a cable television hookup installed at her apartment on November 25, 1986. Appellant ordered the installation through Rogers, and Rogers subcontracted with Atrex for the installation at appellant's residence.

Richard Zechman was an employee of Atrex, Inc. Zechman brought Jeffrey Charette with him on the installation service at appellant's residence. During the installation, appellant spoke briefly with Charette and watched him do his work to see that he did not damage the walls or the woodwork. Charette was not employed by either Rogers or Atrex, but for purposes of the summary judgment motion, the trial court was permitted to assume that Atrex had at least constructive knowledge of the practice of employees taking "ride alongs" to some installation jobs. Charette had previously been convicted of criminal sexual conduct and had been released from a Wisconsin prison several months prior to the incident in question.

After the installation, appellant received a telephone message on her answering machine from "Jeff from Rogers" asking whether they had left the service invoice at her apartment. Appellant did not return the call.

On December 1, 1986, at approximately 2:30 a.m., appellant was awakened by her doorbell. Because the buzzing continued, and because of the late hour, appellant thought it "might have been someone in trouble." As the building was not equipped with an intercom system, appellant went downstairs to see who was there. After appellant had descended the stairs, she was in an inside hallway adjacent to an outside foyer area. There was a locked door between the foyer area and the inside hallway which constituted a common area, for the building's tenants. The foyer area was open to the public by an outside doorway. In the foyer area was a doorbell panel listing the apartment numbers.

Appellant pulled a curtain back at the doorway to see who was there. She saw that the person in the outside area was "the man who had installed [her] cable TV." The man was not wearing any uniform or logo identifying him with Rogers or Atrex. Appellant thought it was odd that "the TV installer" would be there at 2:30 in the morning. Although appellant says she recognized Charette as one of the installers, he did not have any tools with him and he did not tell appellant he was there for any cable business. Appellant also concedes that she did not get the impression that he was there for cable business.

Appellant claims it was difficult to hear through the door. She also claims that she was still thinking whoever was buzzing might have been in trouble. Appellant stated that when this individual had been in her apartment earlier, "We had had conversations. He seemed fine. I had no suspicions of him, based on my earlier interaction with him." Thinking she might be able to help if this person was in trouble, she opened the door, and asked him what he wanted.

Charette entered the hallway area and a discussion ensued as to which apartment he was trying to buzz and which he had in fact

buzzed. Charette claimed to know another tenant in the apartment next to appellant's, but appellant said Charette had not mentioned this when he installed the cable.

At that point, appellant grew somewhat suspicious of Charette's purpose for being at the apartment, and also became irritated with him. She turned to go back up the stairs to her apartment and Charette reached over her shoulder. Appellant turned to face him and saw Charette had a knife. The two stared at each other for a few moments, and then appellant screamed. Charette then stabbed appellant and left. The trial court granted respondent's motion for summary judgment, finding that respondent did not owe the appellant any legal duty to protect her from Charette's criminal attack under these facts.

## ISSUE

Did the trial court err in granting respondents' motion for summary judgment on the grounds that appellant could not, as a matter of law, demonstrate that, under the circumstances, respondents owed her a duty to protect against the criminal act of a third party?

## ANALYSIS

■ Appellant alleges a cause of action for negligence against respondents. Appellant was the victim of a criminal act perpetrated by a third party. The general rule is that the criminal act of a third person is an intervening cause sufficient to break the chain of causation. *Rullman v. Fisher*, 371 N.W.2d 588, 590 (Minn.App. 1985). The general rule does not apply, however, in certain limited circumstances. In *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168 (Minn.1989), the supreme court set down the basis for imposing civil liability on an individual for the criminal act of another:

If the law is to impose a duty on A to protect B from C's criminal acts, the law usually looks for a special relationship between A and B, a situation where B has in some way entrusted his or her safety to A and A has accepted that entrustment. This special relationship also assumes that the harm represented by C is something that A is in a position to protect against and should be expected to protect against.

Appellant argues that by allowing respondents' personnel access to her home, she entrusted her safety to the respondents, and therefore the "special relationship" exists.

■ Respondents have, for the purpose of the summary judgment motion, stipulated to the fact that Rogers and Atrex had knowledge of the practice of the cable installers taking "ride alongs" to their customers' homes. It is true that respondents owed appellant a duty of care when their personnel visited her home. Appellant maintains that respondents, by acquiescing in the "ride alongs" and by failing to investigate these "ride alongs" for criminal propensities, breached their duty of care owed to appellant as called for by the special relationship. The caselaw seems to support this argument. *Erickson*, 447 N.W.2d at 168; *Ponticas v. K.M.S. Inv.*, 331 N.W.2d 907 (Minn.1983).

Appellant's more formidable obstacle, however, is linking this arguable breach to her eventual injury. There are two separate but related ways of viewing the attenuated connection between respondents' misconduct and appellant's injury. The problem can be analyzed in terms of a *duty* issue, or as a *causation* issue. The focus of the analysis affects the roles of the court and the jury. "Generally, the existence of a legal duty is an issue for the court to determine as a matter of law." *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). In contrast, questions of causation are normally for the jury to decide. *Ponticas*, 331 N.W.2d at 915; *Thorn v. Glass Depot*, 373 N.W.2d 799, 803 (Minn. App.1985) *pet. for review denied* (Minn. Nov. 1, 1985). Whether the facts in the present case pose a question of law or of fact is relevant in determining whether summary judgment was appropriate.

The trial court found that no duty existed because the injury was not "foreseeable." The trial court stated that the issue

was whether the assault upon the appellant was sufficiently foreseeable to impose on respondents a duty to prevent any contact between Charette and appellant. The trial court stated that because the harm resulted in an unforeseeable manner, respondents owed no duty to appellant.

The *manner* in which the harm actually occurred, however, seems more closely related to the causation element, not the duty element. The trial court's discussion about the "unforeseeability" of the eventual attack focuses on the attenuated causal chain between the respondent's alleged breach and the injury:

> There was no reasonable basis for these cable companies to anticipate that an individual who had been accompanying an employee on installation jobs would return to [appellant's] apartment building one week later and that [appellant] would open her door to him at 2:30 a.m. under circumstances completely unrelated to any type of installation service. Even if [respondents] had investigated and were aware of Charette's criminal background, the independent actions of Charette would not have been foreseeable.

The trial court seems to have focused on how the intervening factors negated any effect respondents' alleged negligence might have had on the eventual damaging conduct. These intervening factors, however, relate to the causation issue, not the duty issue. Although the trial court stated that it had decided the case by concluding that respondents owed no duty to appellant, its discussion leads to the conclusion that proximate causation was lacking.

We agree with the trial court that the case hinged on a question of law such that summary judgment was appropriate. We also agree that appellant, under these specific facts, has not demonstrated the duty element of the tort of negligence adequately. We base this decision not on a "foreseeability" inquiry, however, but rather on a "timing" judgment. The respondent cannot be said to have stood in any "special" relationship with appellant *at the time the attack occurred.* The appellant might possibly have stood in an "entrustment relationship" with respondent when she allowed respondents' personnel access to her residence. This relationship, however, was not in effect when the incident occurred one week later, especially since appellant conceded she did not believe Charette was at her residence for cable business. Appellant's trust in respondent cannot be said to have been a substantial factor in the resulting injury.

Although respondent may have been in a "special relationship" with appellant at one point in time, this "special relationship" is finite in length. The entrustment relationship simply was not in effect one week after the cable installation was complete, when Charette did not use his association with respondents to gain access to the appellant. The fact that appellant may have recognized Charette as "the man who installed my cable" cannot be said to rise to the trust level necessary to re-establish the "special relationship."

We do not believe the question of "foreseeability" applies to the duty issue under these facts. There are Minnesota decisions discussing foreseeability as a factor affecting both the duty and causation elements of negligence. *See, e.g., Quinn v. Winkel's, Inc.,* 279 N.W.2d 65, 68 (Minn.1979) (duty issue); *Dellwo v. Pearson,* 259 Minn. 452, 453, 107 N.W.2d 859, 861 (1961) (duty issue); *Fjellman v. Weller,* 213 Minn. 457, 469, 7 N.W.2d 521, 529 (1942) (causation issue); *Lennon v. Pieper,* 411 N.W.2d 225, 228 (Minn.App.1987) (causation issue). We believe that the trial court's discussion of foreseeability relates more closely to the causation element. The trial court focused on the *manner* in which the harm occurred. We believe the foreseeability factor relates to the duty element not as to the manner in which the harm occurred, but rather as to the *type* of danger the alleged misconduct created. The type of danger respondents created by allowing individuals with violent propensities access to their customers' homes is that those individuals will act on those violent propensities and do violence upon the customers. Charette's conduct is "foreseeable" in that context.

The unforeseeable aspect in this specific case is the *manner* in which that foreseeable conduct manifested itself. For this reason, if the case were to be decided on a "foreseeability" inquiry, the focus would shift from the duty element to the proximate cause element. Because proximate cause issues are generally for the jury, however, we believe there is a better basis for affirming the summary judgment than the unforeseeability of the manner in which the danger created actually materialized.[1] Recognizing that the "special relationship" was not in effect at the time of the injury is the better basis. Without the special relationship, there is no grounds for holding respondent liable for the criminal conduct of Charette.

Had Charette attacked appellant *at the time* he gained access to her home to conduct cable business, appellant would have a stronger argument which might render summary judgment improper. The same would be true if Charette had used his earlier entrance into appellant's residence to facilitate his later entrance at the time he attacked her.[2] On the present facts, even when viewed most favorably to appellant, the general rule applies:

> Ordinarily, there is no duty * * * unless a special relationship exists, either between the actor and the third person which imposes a duty to control, or between the actor and the other which gives the other the right to protection.

*Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979). Charette's merely learning which apartment to buzz in the hope the occupant would recognize him and let him in is not enough to continue the "special relationship" which may have been in effect at an earlier time.

**1.** This is not to say that we feel the trial court was incorrect in describing the chain of events as "unforeseeable," or that the trial court necessarily was incorrect in granting summary judgment on that basis. If reasonable minds could not arrive at differing results concerning proximate causation, the court may decide the issue itself as a matter of law. *Lyons v. SCNEI, Inc.*, 262 N.W.2d 169, 170 (Minn.1978); *Lennon*, 411 N.W.2d at 228 (Minn.App.1987); *Maanum v. Aust*, 364 N.W.2d 827, 832 (Minn.App.1985) *pet. for review denied* (Minn. June 14, 1985). We

## DECISION

We agree with the trial court that respondent did not owe appellant a duty to guard against the attack under the circumstances of this case.

Affirmed.

merely feel that the alternate basis for affirmance is the best one.

**2.** *See, e.g., D.R.R. v. English Enterprises, CATV*, 356 N.W.2d 580 (Iowa App.1984). In this case, the victim's attacker allegedly gained access to the victim's residence by using a passkey provided to him by the cable company to install the service. The nexus between the cable company's malfeasance and the resulting injury was much clearer in *D.R.R.* than in the present case.