LILLEHAUG, Justice.
This case arises from the death of an off-duty bar employee who was fatally injured while helping other bar employees eject an aggressive patron from a Minneapolis bar. The employee's family sued the bar for the death, pleading innkeeper-negligence and dram-shop claims. The district court granted the bar's motion for summary judgment. On the innkeeper-negligence claim, the court determined that the bar owed no duty based on the doctrine of *188 implied primary assumption of risk. On the dram-shop claim, the court decided as a matter of law that the claim failed on the element of proximate cause. The court of appeals reversed and remanded on both claims. We affirm.
FACTS
Maxwell Henson, an off-duty employee of Uptown Drink, a Minneapolis bar, was fatally injured on the evening of March 23, 2011. The sequence of events that led to his death began when two friends, Nicholas Anderson and Jason Sunby, met for drinks at a restaurant near Uptown Drink. Anderson had been drinking at home before he met Sunby. Both men believe they drank alcohol during their hour and a half at the restaurant. The pair left the restaurant to continue drinking at Uptown Drink.
Over the next two hours, Anderson, by his own estimate, drank between 6 and 10 glasses of beer, along with a couple of shots of hard liquor. Sunby admitted having 12 or 14 drinks that evening.
The record contains a video from Uptown Drink's surveillance camera covering the approximately 20 minutes before Henson's fatal injury. The events shown in the video are best described in the present tense.
The video shows Anderson and Sunby drinking frequently from what appear to be glasses of beer and several shot glasses of hard liquor. At 9:24 p.m., Anderson leaves camera view. A server, Natalie Cooper, and an off-duty coworker appear to have a discussion about Anderson and Sunby. Apparently, Anderson sat down at a table with two women he did not know.
In the 11 minutes while Anderson is off camera, Sunby appears to take a shot of liquor, leans forward onto the bar, and struggles for several minutes to keep his balance. At 9:29 p.m., he slips off the bar stool entirely. After steadying himself, Sunby turns and speaks to patrons seated at the bar to his left. They stand up and move away. One of the patrons stated in an affidavit that Sunby "was obviously drunk, he was slurring his speech, he was loud, rude, and was swearing[,] and by his tone it was our impression [Sunby] was trying to incite an altercation." The patron detected "a racial overtone to what [Sunby] was saying."
After moving, a patron signals to bartender Jordan Shaw, who had stepped away, and tells Shaw "that [Sunby] needs to leave" because "he is drunk and out of line." At 9:34 p.m., Shaw takes a glass away from Sunby and tells him to leave. As Shaw is stepping out from behind the bar, there is some physical jostling between Sunby and the patrons until Shaw reaches the group.
At 9:36 p.m., Anderson returns to view, escorted by Frank Thalacker, the general manager of Uptown Drink. Server Cooper had asked Thalacker to intervene with Anderson, because she "thought the women looked uncomfortable" when Anderson sat down at their table. Thalacker asked Anderson to leave the two women alone.
For the next 90 seconds Anderson and Sunby talk while Sunby struggles to put on his coat. Both men appear to be swaying.
At 9:37:45 p.m., as Anderson moves toward the exit, Sunby attempts to punch Thalacker. He misses and tumbles into the bar. Thalacker gets Sunby on his feet and bartender Shaw grabs Sunby from behind. At the same time, Anderson grabs Thalacker from behind. As Thalacker staggers backward, Maxwell Henson, an off-duty bar employee, appears and pulls Anderson off of Thalacker. Henson and Thalacker pull Anderson toward the exit while Shaw, after gaining control of Sunby, follows with *189 Sunby. Approximately 30 seconds elapse between Sunby's punch and the time Sunby and Anderson exit the bar.
Off camera, as Thalacker, Henson, and Anderson reached the front door of the bar, all three tripped and fell onto the sidewalk. Henson hit his head, was knocked unconscious, and was transported to Hennepin County Medical Center. He suffered a traumatic brain injury and never regained consciousness. He died six days later.
In February 2012, Henson's family[1] sued Uptown Drink, LLC, for innkeeper negligence and violation of the Dram Shop Act, Minn. Stat. §§ 340A.801 -.802 (2018). Uptown Drink moved for summary judgment, arguing that the lawsuit was barred by the Workers' Compensation Act. After a workers' compensation judge determined that Henson's death arose out of and in the course of his employment at Uptown Drink, the district court granted Uptown Drink's summary-judgment motion. Henson v. Uptown Drink, LLC , No. A15-0493, 2015 WL 9264078, at *2 (Minn. App. Dec. 21, 2015), rev. denied (Minn. Mar. 15, 2016). The court of appeals reversed the district court, holding that the evidence was insufficient to establish that Henson's death arose out of and in the course of his employment. Id. at *8.
On remand to the district court, Uptown Drink again moved for summary judgment on the innkeeper-negligence and dram-shop claims. The district court granted Uptown Drink's motion, deciding sua sponte that, although the innkeeper-negligence claim presented "close questions of fact," the doctrine of implied primary assumption of risk applied as a complete bar to recovery. Henson v. Uptown Drink, LLC , No. 27-CV-12-10634, 2017 WL 4220906, at *5 (Henn. Cty. Dist. Ct. filed Feb. 8, 2017). The district court also decided that the dram-shop claim failed on the element of proximate cause, because Anderson's and Sunby's intoxication was "too remote" to be the cause of Henson's injuries. Id . at *4. After supplemental briefing on the applicability of the assumption-of-risk doctrine, the district court denied Henson's family's motion to reconsider.
In December 2017, the court of appeals again reversed and remanded to the district court. Henson v. Uptown Drink, LLC , 906 N.W.2d 533, 536 (Minn. App. 2017). The court of appeals held that the district court had improperly applied the doctrine of implied primary assumption of risk "[b]ecause reasonable persons could reach different conclusions on whether Henson had actual knowledge of the particular risks presented." Id . at 540. Even if the doctrine did apply, said the court, there was sufficient evidence for a reasonable fact-finder to conclude that Uptown Drink had enlarged the risk. Id. The court also reversed the grant of summary judgment on the proximate cause element of the dram-shop claim, reasoning that "[i]ntoxication need only be a substantial factor in bringing about the injury." Id . at 543. "Viewed in a light most favorable to [Henson's family], there is sufficient evidence that intoxication was a substantial factor in causing Henson's injury, and there is sufficient evidence of a direct link between that intoxication and the injury." Id . We granted review as to both claims.
ANALYSIS
This is an appeal from a grant of summary judgment, which "is appropriate *190 when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." Senogles v. Carlson , 902 N.W.2d 38, 42 (Minn. 2017). We review a grant of summary judgment de novo. Commerce Bank v. W. Bend Mut. Ins. Co. , 870 N.W.2d 770, 773 (Minn. 2015). When conducting this review, "we view the evidence in the light most favorable to the nonmoving party ... and resolve all doubts and factual inferences against the moving parties." Rochester City Lines Co. v. City of Rochester , 868 N.W.2d 655, 661 (Minn. 2015). Summary judgment is "inappropriate when reasonable persons might draw different conclusions from the evidence presented." Osborne v. Twin Town Bowl, Inc. , 749 N.W.2d 367, 371 (Minn. 2008) (citation omitted) (internal quotation marks omitted).
Henson's family pleads two claims. The first is innkeeper negligence. There are four elements to a claim of innkeeper negligence: (1) notice of the offending party's "vicious or dangerous propensities" by "some act or threat," (2) adequate opportunity for the innkeeper to protect the injured patron, (3) failure on the part of the innkeeper to take reasonable steps to do so, and (4) foreseeable injury. Boone v. Martinez , 567 N.W.2d 508, 510 (Minn. 1997).
Henson's family's second claim is under the Civil Damages Act, Minn. Stat. § 340A.801 -.802 (2018), commonly referred to as the Dram Shop Act. It creates a right of action for a plaintiff "injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person." Id. , subd. 1. The purposes of this act are "to punish an offending vendor and deter others from making illegal sales of liquor" and "to compensate those who would under ordinary negligence or other tort principles obtain no recovery for their injuries." Randall v. Vill. of Excelsior , 258 Minn. 81, 103 N.W.2d 131, 134 (1960).
To prove a dram-shop claim, a plaintiff "must first prove that the sale of alcohol was illegal under Minn. Stat. ch. 340A." Osborne , 749 N.W.2d at 372. The plaintiff " 'must show by competent proof' " that the illegal sale of alcohol caused or contributed to the intoxication and " 'was a proximate cause of the [plaintiff's] injuries.' " Kryzer v. Champlin Am. Legion No. 600 , 494 N.W.2d 35, 36-37 (Minn. 1992) (quoting Hartwig v. Loyal Order of Moose, Brainerd Lodge , 253 Minn. 347, 91 N.W.2d 794, 801 (1958) ).
I.
We start with the innkeeper-negligence claim. We must first consider whether the claim is barred because Henson impliedly assumed the risk of injury.
Primary assumption of risk is a common-law doctrine that "completely bars a plaintiff's claim because it negates the defendant's duty of care to the plaintiff." Daly v. McFarland , 812 N.W.2d 113, 119 (Minn. 2012). It "arises 'only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks.' " Bjerke v. Johnson , 742 N.W.2d 660, 669 (Minn. 2007) (quoting Olson v. Hansen , 299 Minn. 39, 216 N.W.2d 124, 127 (1974) ). Primary assumption may be express or implied. See, e.g. , Armstrong v. Mailand , 284 N.W.2d 343, 351 (Minn. 1979).
In this case, neither party argues that there was an express relationship between Max Henson and Uptown Drink regarding bar security. Thus, the issue is whether the doctrine of implied primary assumption of risk applies. This is the first case in which we have been asked to extend the doctrine to foreclose claims arising *191 out of the operation and patronage of bars. We decline to do so.
We have said that "[t]he doctrine of assumption of risk is not favored, and should be limited rather than extended." Suess v. Arrowhead Steel Prods. Co. , 180 Minn. 21, 230 N.W. 125, 126 (1930). "The classes of cases involving an implied primary assumption of risk are not many ...." Springrose v. Willmore , 292 Minn. 23, 192 N.W.2d 826, 827 (1971).
Since Springrose , we have limited the doctrine "to [only] certain types of circumstances," largely in the arena of "participants and spectators of inherently dangerous sports." Daly , 812 N.W.2d at 120 ; see Wagner v. Thomas J. Obert Enters. , 396 N.W.2d 223, 226 (Minn. 1986) ("One of the few instances where primary assumption of the risk applies is in cases involving patrons of inherently dangerous sporting events ....") As the court of appeals correctly observed in Schneider ex rel. Schneider v. Erickson , "Minnesota courts rarely apply primary assumption of the risk, and have found that its application is only appropriate under limited circumstances." 654 N.W.2d 144, 149 (Minn. App. 2002).
In recent years we have been invited to extend implied primary assumption of risk to new areas and have declined to do so. See, e.g. , Daly , 812 N.W.2d at 120-21 (declining to relieve the defendant of his duty to operate his snowmobile reasonably by extending the doctrine to recreational snowmobiling). And today we have declined to extend the doctrine to recreational downhill skiing and snowboarding. Soderberg v. Anderson , 922 N.W.2d 200, ---- (Minn. Jan. 23, 2019).
We see no good reason to extend the doctrine to preclude liability for injuries arising out of the operation and patronage of bars. Although the service and consumption of alcohol can most certainly lead to incidents such as the one here, we have never considered operating and patronizing bars to be inherently dangerous activities. The operation and patronage of bars is not-and should not be-a contact sport. To the contrary, our precedent is clear that bar owners, as do all innkeepers, have a duty of care. As we have said, "Tavern owners in Minnesota have the duty to exercise reasonable care under the circumstances to protect their patrons from injury." Alholm v. Wilt , 394 N.W.2d 488, 490 (Minn. 1986) ; see also, e.g. , Swanson v. Dugout, Inc. , 256 Minn. 371, 98 N.W.2d 213, 215 (1959) (explaining the duty of an "operator of an establishment where beer and liquor are sold"); Priewe v. Bartz , 249 Minn. 488, 83 N.W.2d 116, 119 (1957) (expressing "no doubt" that a tavern operator "owed a duty to those coming upon his premises"); Windorski v. Doyle , 219 Minn. 402, 18 N.W.2d 142, 145 (1945) (stating the "general" rule that a bar owner "was required to use reasonable care to protect its guests and patrons"). That is not to say that a bar owner's liability is unlimited; the four well-established elements of innkeeper negligence-especially foreseeability-sufficiently mark the duty of innkeepers to prevent injuries.
Our decision not to extend the doctrine of implied primary assumption of risk to the operation and patronage of bars makes it unnecessary for us to reach two related issues decided by the court of appeals: whether Henson voluntarily assumed the risk of injury and whether Uptown Drink enlarged the risk.[2] Instead, we turn to an *192 issue that is no stranger to us: the element of foreseeability in the context of barroom brawls.
II.
Uptown Drink contends that, as a matter of law, it is not liable in negligence because Henson's death was not foreseeable. Our precedent has announced no categorical rule governing which bar injuries are foreseeable and which are not; rather, our holdings are heavily fact dependent.
For example, in Boone , we relied on the defendant's testimony that "he deliberately took [the plaintiff] by surprise in his initial assault," on witness testimony that "the fight broke out suddenly and without any warning," and on the bar employees' testimony that "by the time they arrived at the scene of the fight, it already had been broken up." 567 N.W.2d at 511. We held that "the fight was sudden and unforeseeable" and, therefore, the bar was not liable. Id.
Similarly, in Devine v. McLain , 306 N.W.2d 827 (Minn. 1981), we held that, based on specific facts, it was unforeseeable that Dale Devine would be shot by Darlene McLain. Id. at 830-31. McLain was a new resident in the locality, she had never been to the bar before, and "there was nothing, except the fight that broke out between the McLains and one of the plaintiffs [30 minutes before the shooting], to put the bar on notice ... The fight [had] ended and the McLains [had] left." Id. at 830 ; see also Schwingler v. Doebel , 309 N.W.2d 760, 762 (Minn. 1981) (determining that, because "there was no evidence that Doebel was obviously intoxicated, loud, argumentative, or belligerent prior to the beer-throwing incident," the injury was unforeseeable); Filas v. Daher , 300 Minn. 137, 218 N.W.2d 467, 470 (1974) (concluding that it was unforeseeable that, in the midst of a sudden scuffle, the plaintiff would be hit over the head with an empty beer bottle).
Unlike these cases of unanticipated incidents, when the totality of the facts and circumstances put the innkeeper on notice, we have held that there was a duty based on foreseeability. In Klingbeil v. Truesdell , 256 Minn. 360, 98 N.W.2d 134 (1959), we held that "there is ample evidence in the record from which the jury could find that [the patrons] were intoxicated to the point where the proprietor or his servant should have been aware of the fact that their conduct would lead to trouble." Id. at 138 ; see also Mettling v. Mulligan , 303 Minn. 8, 225 N.W.2d 825, 828 & n.3 (1975) (noting that we have "found liability in tavern owners predicated upon intoxication of the offending patron" and listing cases).
In this case, there was enough evidence on the element of foreseeability to create a disputed issue of material fact or disputed reasonable inferences from undisputed facts, making summary judgment improper. The district court observed that the issue of foreseeability presented a close question of fact, and we agree. It was clear that Anderson and Sunby were drinking together. As early as 9:24 p.m., when the server turned to watch Anderson and alerted her off-duty coworker, Anderson's behavior had come to the attention of Uptown Drink employees. By 9:34 p.m., Sunby was in an altercation with other patrons, prompting the bartender to take Sunby's drink and tell him to leave. As the *193 bartender said, "There already [was] a problem." By 9:36 p.m., the general manager had intervened with Anderson. Even before Sunby threw a punch and Anderson grabbed the manager, there was evidence of both obvious intoxication and problematic interactions with bar employees and other patrons. This evidence is enough to create a disputed issue of material fact or disputed reasonable inferences from undisputed facts. The element of foreseeability must therefore be decided by the fact-finder.[3]
III.
We turn now to the dram-shop claim and the question of whether the undisputed facts and reasonable inferences show that Anderson's intoxication was not the proximate cause of Henson's injury. For "proximate cause to exist between the intoxication and the injury in a dram shop action, ... the intoxication must have been a substantial factor in bringing about the injury." Osborne , 749 N.W.2d at 373. The intoxication need not be "the sole cause of injury for liability to attach." Id. at 375.
Thus, to survive summary judgment, Henson's family need not show that Anderson's intoxicated actions were the sole cause of the injury to Henson, but rather that there exists a genuine issue of material fact as to whether Anderson's actions were a proximate cause of the fall and injury. See id. at 375 ("[A]s articulated in Kvanli , our dram shop case law supports our conclusion that the intoxication need not be the sole cause of injury." (citing Kvanli v. Vill. of Watson , 272 Minn. 481, 139 N.W.2d 275, 278 (1965) ) ). Issues relating to Henson's own fault, if any, do not preclude liability, and are considered by the fact-finder in its comparative-fault analysis. See id. ("The Dram Shop Act explicitly provides that comparative negligence principles ... apply to dram shop actions.").
As we said in Osborne , "[w]hether proximate cause exists in a particular case is a question of fact for the jury to decide." Id. at 373. This case is not the rare exception to that general rule. As in Osborne, there is sufficient evidence in the record for Henson's family's dram-shop claim to survive a motion for summary judgment. There is abundant evidence-in the form of video evidence, deposition evidence, and police reports-that Anderson was intoxicated. Moreover, the record includes an expert report opining that Anderson would have had a very high blood-alcohol reading, "impairing his reasoning, balance, and muscle coordination, and causing aggression." Henson , 906 N.W.2d at 541. The record also shows exactly that: impaired reasoning, balance, motor coordination, and aggression. A reasonable fact-finder could determine that Anderson's intoxication, violent outburst, and subsequent physical resistance, taken together, were the proximate cause of the fall that killed Henson.
Uptown Drink seeks to distinguish Osborne by arguing that, in that case, the intoxicated party harmed himself by jumping into the river, whereas in this case the intoxicated party, Anderson, was not the person injured. This argument misapprehends Osborne . It was not the fact that the intoxicated party harmed himself that was dispositive; instead, it was the fact that the intoxicated person caused the harm, which happened to be to himself. We concluded that "a person's intoxication at the time of *194 the injury-causing event has been sufficient to withstand summary judgment when the injury was caused by the actions and choices of the intoxicated party." 749 N.W.2d at 377. The same is true here.
Therefore, summary judgment on the dram-shop claim was improper.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
CHUTICH, J., took no part in the consideration or decision of this case.

The innkeeper-negligence claim was brought by Maxwell Henson's father, David Henson, and Noah Cashman, as co-trustees for Henson's estate. The dram-shop claim was brought by members of Henson's family in their personal capacities, as required by Minn. Stat. § 340A.801, subd. 1.

The court of appeals, relying on its precedent of Rusciano v. State Farm Mutual Automobile Insurance Co. , 445 N.W.2d 271 (Minn. App. 1989), held in the alternative that there was sufficient evidence to preclude application of implied primary assumption of risk because "Uptown Drink, by providing alcohol to an already intoxicated Anderson and allowing Henson to physically assist in Anderson's removal, enlarged the risks that Henson may have assumed ...." 906 N.W.2d at 540. We have never explicitly decided whether there is an enlargement-of-the-risk exception to the doctrine of implied primary assumption of risk, and we need not do so today.

Uptown Drink would have us draw the foreseeability line at the moment a physical altercation began: when Sunby threw the punch, at 9:37:45 p.m. But a standard of foreseeability depending only on when an altercation begins is contrary to our decisions in Filas and Klingbeil , which were based on all of the facts and circumstances.