**STATE of Minnesota, Respondent,**

v.

**John Edward PALMER, Jr., Appellant.**

**No. C7–93–433.**

Court of Appeals of Minnesota.

Nov. 9, 1993.

Review Denied Jan. 14, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty. and Paul R. Scoggin, Asst. County Atty., Minneapolis, for respondent.

Marc G. Kurzman, Kurzman, Grant & Ojala, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

Appellant John Edward Palmer, Jr. was arrested after being identified as the person who sold a cooperating witness quantities of LSD and after that witness taped conversations in which she and appellant discussed drugs. Appellant waived his right to a jury trial. The trial court found him guilty of two counts of controlled substance abuse in the first degree, Minn.Stat. § 152.021, subd. 1(3). Because we find that the tape-recorded conversations were properly admitted and the evidence was sufficient to sustain appellant's convictions, we affirm.

## FACTS

Minneapolis police discovered that Kathleen Finley was shipping LSD in "plastic-type" form to persons in West Monroe, Louisiana. They obtained and executed a search warrant at Finley's home, where they found quantities of cocaine powder, methamphetamine, and LSD; a handgun; Federal Express receipts; and a large quantity of money. Finley agreed to cooperate with the police if she were not charged under federal gun statutes or Minnesota statutes. She named appellant as the source of the LSD and told police that she bought the drug from him for $1.10 a "hit" and planned to sell it for $2.00 to $3.00 per unit.

Police escorted Finley to Louisiana in order for her to face drug charges there. She telephoned appellant a day after her arrival, at the behest of narcotics authorities in Louisiana, who also had her tape the conversation. Without mentioning drugs, Finley told appellant that she had buyers for more of his product, and that her customers loved the shipment appellant had sent to them earlier. She stated, "Blue is beautiful," which according to a Minneapolis narcotics officer refers to a type of LSD. Finley also testified that she was referring to LSD and that she and appellant discussed sending another shipment to Louisiana.

Finley received a telephone call from appellant shortly after she returned to Minneapolis. Her answering machine partially recorded that call, in which appellant stated:

No, I, nothing's up, I went and, you got everything that was halfway decent before, I mean the stuff is, it's just, it's so brittle, you can't even cut it, it just breaks into a million pieces.

Finley explained that appellant was talking about the LSD that she had asked him to send to Louisiana.

Appellant planned to be in Minneapolis for a high school class reunion, and Finley arranged to meet him at the Walker Art Center so she could pay him $850 for LSD appellant sent her earlier. For the meeting, Finley wore a body wire and taped the conversation. Again, Finley and appellant discussed the LSD shipment to Louisiana, and

he mentioned working out a new design for his product. The narcotics officer testified that appellant's comment referred to manufacturing LSD in a unique form in order to get a better price.

Shortly after the conversation at the Walker Art Center, police arrested appellant and charged him with two counts of controlled substance crime in the first degree. At trial before the court, appellant's objection to admission of the three recorded conversations was overruled, and Finley and the narcotics officer testified that the language used in the conversations referred to drugs. In addition, a chemist with the Minneapolis Department of Health testified that she analyzed the sheets of blue, plastic-like material recovered from Finley's house and found them to contain LSD. She further testified that the five sheets were divided into one-eighth-inch squares and that there were 3,850 squares in all.

The trial court found appellant guilty of both counts of controlled substance crime and sentenced him to 93 months.

## ISSUES

1. Did the trial court err in admitting tape-recorded statements made outside an adversarial proceeding and in which the declarant neither identified himself nor mentioned drugs?

2. Is there sufficient evidence to support appellant's conviction for controlled substance crime in the first degree where the state produced no evidence concerning the strength or the weight of the LSD?

## ANALYSIS

### I.

 Rulings on evidentiary matters generally rest within the sound discretion of the trial court. *Caldwell v. State*, 347 N.W.2d 824, 826 (Minn.App.1984). Even if the trial court errs in an evidentiary ruling, "[a] reversal is warranted only when the error substantially influences the jury to convict." *State v. Brown*, 455 N.W.2d 65, 69 (Minn.App.1990) (quoting *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981)), *pet. for rev. denied* (Minn. July 6, 1990).

 The state offered appellant's taped conversations into evidence both as admissions of a party-opponent and as statements against interest. Under the rules of evidence:

> A statement is not hearsay if * * * [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.

Minn.R.Evid. 801(d)(2)(A). Appellant alleges that the trial court erred in admitting the taped conversations, and argues that rule 801(d)(2)(A) does not apply unless the declarant is a party in an adversary proceeding at the time he made the statement. His authority for this claim is the committee comment to rule 801(d)(2):

> The requirements of trustworthiness, firsthand knowledge, or rules against opinion which may be applicable in determining whether or not a hearsay statement should be admissible do not apply when dealing with party admissions. Because the rationale for their admissibility is based more on *the nature of the adversary system* than in principles of trustworthiness or necessity, it makes sense to treat party admissions as nonhearsay.

Minn.R.Evid. 801(d)(2) cmt. (emphasis added). We do not believe that the comment imposes on the rule a requirement that there be an adversary proceeding at the time the statement is made. Rather, we believe that appellant confuses rules 801 and 804. Under rule 804(b)(3), an exception to the hearsay rule, the statement must be against the declarant's interest when made and the declarant must be unavailable as a witness. Charles T. McCormick, *McCormick on Evidence* § 254 at 143 (John William Strong et al., eds., 4th ed. 1992). Rule 801, on the other hand, applies to words or actions inconsistent with a party's position at trial, relevant to the substantive issues in the case, and offered against the party. *Id.* at 142. Statements that meet rule 801 requirements need not satisfy the hearsay exception requirement that they possess circumstantial guarantees of trustworthiness because the party against whom the statement is offered is present in the courtroom and may cross-

examine the witness offering the statement or otherwise present evidence explaining the statement. *See State v. Mitjans,* 408 N.W.2d 824, 830 (Minn.1987) (statements made by defendant to an officer were admissible as admission by a party opponent where officer was present in court, under oath and subject to cross-examination).

■ The taped conversations meet the rule 801 requirements. While appellant never identified himself on the telephone, Finley testified that she recognized his voice. Finley, the narcotics officer, and the health department chemist all testified that the taped conversations contained references to drugs even though appellant and Finley never explicitly mentioned drugs or LSD. Therefore, appellant's statements permit an inference of guilt. Accordingly, because the tapes are inconsistent with appellant's position at trial, are relevant to the substantive issue in the case, and are offered against appellant, they constitute admissions.

■ We believe that the taped conversations also qualify as statements against penal interest. Appellant alleges that they constitute inadmissible hearsay and cannot be admitted under Minnesota Rule of Evidence 804 because the statements fail to meet the witness unavailability requirement set forth in rule 804(a). We agree with the state, however, that appellant was "unavailable" under rule 804(a)(1):

> "Unavailability as a witness" includes situations in which the declarant: (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement.

Minn.R.Evid. 804(a)(1). Although appellant was present in the courtroom, his testimony was unavailable to the state because he exercised his constitutional privilege to remain silent. His tape-recorded statements therefore are admissible under rule 804(b)(3):

> A statement which was at the time of its making * * * so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Minn.R.Evid. 804(b)(3). Since testimony revealed that the taped conversations referred to drugs, the statements subject appellant to criminal liability. Thus, the conversations qualify as admissible evidence under rule 804(b)(3).

## II.

Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989).

■ A person is guilty of controlled substance crime in the first degree if

> on one or more occasions within a 90–day period the person unlawfully sells one or more mixtures of a total weight of 50 grams or more containing methamphetamine, amphetamine, phencyclidine, or halucinogen or, if the controlled substance is packaged in dosage units, equaling 200 or more dosage units.

Minn.Stat. § 152.021, subd. 1(3) (1992). Appellant argues that he should not have been convicted under this statute because there was no evidence that he sold more than 200 dosage units of LSD. He applies the retail cost per dose in San Francisco ($12.00) against the amount Finley owed him ($850.00) to claim that the amount of LSD Finley purchased was 70 doses.

The statute does not define "dosage unit." The chemist's testimony, however, revealed that the LSD sheets contained 3,850 small squares of LSD, and Finley testified that four small squares on each sheet constituted a "hit" or dosage unit. As a result, appellant would have sold Finley 962.5 hits. We find this testimony sufficient to meet the statutory requirement for conviction.

■ Appellant also suggests, however, that "dosage unit" must be defined as a specific strength of LSD per dose. We disagree. The statute does not require this. The legislature has defined some substance abuse crimes by the strength of a dosage

unit. For example, Schedule III controlled substances include codeine in the strength not more than 1.80 grams per 100 milliliters or not more than 90 milligrams per dosage unit. Minn.Stat. § 152.02, subd. 4(5)(a) (1992). Not all schedules require a particular strength, however. Since the legislature specified dosage strengths for some drugs, it easily could have done so for LSD if it so intended. We will not supply that which the legislature has declined to supply.

Appellant's criticisms regarding the manner in which the chemist analyzed the drug samples must also fail. Appellant presented no evidence that the chemist erred in her analysis or performed it contrary to accepted procedure. The trial court found that she conducted well-recognized tests on the substances, and viewing the evidence in the light most favorable to the verdict, we cannot disagree.

### DECISION

The trial court properly admitted evidence of the three tape-recorded conversations between Finley and appellant either as an admission or a statement against interest. In addition, the evidence was sufficient to indicate that appellant sold in excess of 200 dosage units of LSD as required under the statute for first degree controlled substance crime.

**Affirmed.**