*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0442**

Franklin C. Olson,
Appellant,

vs.

Rustic Bar, Inc.,
Respondent

**Filed November 23, 2015
Reversed and remanded
Chutich, Judge
Dissenting, Ross, Judge**

St. Louis County District Court
File No. 69DU-CV-14-999

James W. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, Minnesota (for appellant)

Steven E. Tomsche, Erica A. Weber, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stauber, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Franklin C. Olson challenges the district court's order granting summary judgment to respondent Rustic Bar, Inc. on his negligence claim. He argues

that the district court erred in determining, as a matter of law, that his injury was not foreseeable because Rustic Bar lacked sufficient notice of the wrongdoers' dangerous propensities before the bar brawl in which Olson was injured. Because we conclude that two prior altercations at the Rustic Bar involving the same core group of aggressors raises a genuine issue of material fact concerning notice, we reverse and remand.

## FACTS

Olson broke his leg in the course of a bar brawl that erupted at the Rustic Bar in West Duluth on Saturday, December 28, 2013. Olson and his wife, Patti Olson, who was pregnant at the time, met another couple, Thomas Haney and Kristin Reed, at the bar that evening.

Approximately two hours after the Olsons arrived, four women—Jen Hagadorn, Karlin Ostrander, and twins Lisa Huffman and Lori Lehet—and two men approached their table. Shortly after, a bar brawl erupted. Jeff Flynn, the bar's owner, later learned that the four women and at least one of the men likely instigated the fight.

Kristin Reed told police that Hagadorn had been trying to antagonize her all evening and that she had ignored Hagadorn. At one point, Reed noticed Hagadorn on her phone, and Huffman, Lehet, and Ostrander arrived within minutes of the call. Soon after, Hagadorn, Huffman, Lehet, and Ostrander surrounded Reed at her table, and Reed believed that they intended to fight her.

Other witnesses, including Franklin Olson, Patti Olson, Geoffrey Stroud, and Thomas Haney, corroborate Reed's account of the events. These witnesses testified that

2

the four women encircled Reed, and Hagadorn grabbed Reed by the hair and jerked her off the barstool.

Olson was paying his tab at the bar when the fight began. When Olson saw the fight unfolding, he rushed back to the table to assist his pregnant wife. In the process, Olson fell to the ground and broke his leg. The direct cause of his injury is unclear, but for the purposes of the summary-judgment motion, the district court assumed that one of the four women caused Olson's injury.

Jeff Flynn, Rustic Bar's sole shareholder since 2013, was not present for the brawl. After talking to the two on-duty bartenders about the details of the brawl, Flynn permanently banned the five instigators from the Rustic Bar.

Olson sued Rustic Bar on an innkeeper-liability theory to recover damages for his injuries. Olson alleged that Flynn failed to maintain order at the Rustic Bar sufficient to keep Olson safe from injury by other bar patrons known to be dangerous and violent. Olson argued that Flynn negligently failed to ban Hagadorn, Ostrander, Huffman, and Lehet from the Rustic Bar before December 28, 2013.

Discovery revealed two previous fights involving at least three of the four women deemed to have instigated the December 28, 2013 fight, which Olson argued should have alerted Rustic Bar to their propensities for violence.

**Altercation #1: October 2012; Huffman, Lehet, and Hagadorn.**

Olson claimed that the first fight at the Rustic Bar—involving Hagadorn, Huffman, and Lehet—happened in October 2012. According to Patti Olson, Hagadorn,

Huffman, and Lehet tried to "jump" Erin Johnson,[1] Patti Olson's sister, while Johnson was standing alone at the jukebox. Hagadorn approached Johnson from behind and pulled Johnson away from the jukebox by her hair. Huffman yelled to Johnson, "I'm going to f-cking kill you."

Patti Olson ran to Johnson's aid, pulling Hagadorn off Johnson. Patti Olson and Hagadorn fought on the ground until several bystanders pulled them apart. Lehet and Huffman tried to attack Patti Olson on the ground while she fought with Hagadorn, but bystanders restrained them.

Owner Jeff Flynn was not present that night and did not recall this fight in his deposition testimony. Rustic Bar employees ejected Hagadorn, Lehet, and Huffman immediately following the fight but did not eject Patti Olson or Erin Johnson.

Patti Olson testified that she and Erin Johnson spoke to Jeff Flynn by phone about the fight, stating that they would not continue to patronize the Rustic Bar while Hagadorn, Lehet, and Huffman were still welcome. Erin Johnson stated that Flynn told her that he would not ban Hagadorn, Lehet, or Huffman because they were good customers.

### Altercation #2: Around Labor Day 2013; Hagadorn, Huffman, and Ostrander

According to Olson, the second incident—involving Hagadorn, Huffman, and Ostrander—occurred between late summer and early fall of 2013. Flynn was present that night and testified that he saw the women get into a pushing-and-shoving altercation.

---

[1] Johnson stated that as the women walked in, she recognized them and knew Huffman had a reputation as a trained kickboxer.

4

Flynn personally intervened and he warned the women that he would throw them out if they continued, after which the women apologized and dispersed.[2]

Rustic Bar moved for summary judgment on Olson's innkeeper-liability claim, which the district court granted. The court reasoned that Olson could have established notice by showing either that (1) Hagadorn, Lehet, Huffman, and Ostrander had a known propensity for violence, or (2) the brawl evolved in such a way that Rustic Bar staff had sufficient time to protect patrons from harm. Because the district court determined that Olson could not establish either form of notice, it did not address the remaining elements of negligence.

Olson appeals.

## D E C I S I O N

### I.    Admissibility of Challenged Evidence

As a preliminary matter, Rustic Bar argues that Olson improperly asks this court to consider hearsay to establish the bar's prior notice of the women's propensity for violence. Specifically, Rustic Bar challenges the admissibility of Jeff Flynn's statements regarding the October 2012 fight reported by Patti Olson and Erin Johnson.

---

[2] Olson initially argued that the court should also consider a third altercation involving Ostrander and Hagadorn. Patti Olson testified that, while she and a friend were smoking in the Rustic Bar parking lot, Ostrander approached them, called her friend a "b-word," and forcefully shoved her friend aside so Ostrander could stand closer to Olson. Patti Olson stated that she and her friend ignored the women and retreated inside the bar. Because nothing suggested that Rustic Bar staff learned of the third altercation, Olson's counsel conceded at oral argument that this episode could not contribute to the evidentiary basis for Rustic Bar's notice.

The evidence offered to oppose summary judgment must be admissible at trial. Minn. R. Civ. P. 56.05; *see Nicollet Restoration, Inc., v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995) (affirming summary judgment because appellant failed to present specific admissible facts showing a genuine issue for trial). Absent an applicable exception, hearsay is inadmissible. Minn. R. Evid. 802. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Statements made by a party's agent concerning a matter within the scope of the agency, and offered against that party, are not hearsay. Minn. R. Evid. 801(d) (2).

Rustic Bar first challenges the admissibility of Patti Olson's testimony about her conversation with Jeff Flynn after the October 2012 fight, when Rustic Bar staff ejected Hagadorn, Huffman, and Lehet. Patti Olson testified that she and Erin Johnson called Flynn together about a week after the fight. According to Patti Olson, they each spoke to Flynn and complained about the women's behavior in the bar. They warned him that they would not return to the bar unless Flynn banned the women or hired a bouncer. Patti Olson stated that Flynn acknowledged their complaint.

This evidence establishes that Jeff Flynn, Rustic Bar's agent, spoke to Erin Johnson and Patti Olson about the October 2012 altercation, which directly goes to the establishment of notice. Olson did not offer the statements to prove the truth of the matter they assert, but rather to establish Rustic Bar's notice, which informs the duty element of his innkeeper-liability claim. Because the statements do not fall within the definition of hearsay, and are thus admissible, we consider them in reviewing the district court's decision. *See* Minn. R. Evid. 801(c); *Lake Superior Ctr. Auth. v. Hammel, Green*

6

*& Abrahamson, Inc.*, 715 N.W.2d 458, 481 (Minn. App. 2006) (holding that a letter was admissible to establish notice, not the truth of the matter asserted within), *review denied* (Minn. Aug. 23, 2006).

The second challenged statement recollects the telephone conversation between Johnson and Flynn concerning Flynn's response to the October 2012 fight at Rustic Bar. Johnson's affidavit states that Flynn informed her that he was not going to permanently ban Hagadorn, Huffman, or Lehet from the Rustic Bar because they were good customers.

This statement falls within the non-hearsay category for party-opponent statements. *See* Minn. R. Evid. 801(d)(2); *State v. Palmer*, 507 N.W.2d 865, 867–68 (Minn. App. 1993)(holding that a party-opponent's statement was admissible against him), *review denied* (Minn. Jan. 14, 1994). Flynn's statement arose in his capacity as Rustic Bar's agent, and Olson offers it against Rustic Bar, a party to the lawsuit. Accordingly, the statements are admissible evidence and will be considered in our analysis.

## II.  Innkeeper-Liability Claim

### A.  Summary-Judgment Standard

On appeal from summary judgment, this court reviews whether any genuine issues of material fact remain and whether the district court erred in its application of the law. *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011); *see* Minn. R. Civ. P. 56.03. No genuine issue of material fact remains for trial when the nonmoving party presents evidence that "merely creates a metaphysical doubt as to a factual issue and which is not

7

sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69, 71 (Minn. 1997) (noting that summary judgment is "inappropriate when reasonable persons might draw different conclusions from the evidence presented").

We review the existence of genuine issues of material fact de novo. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002). We also review de novo whether the district court erred in its application of the law. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). Genuine issues of material fact must be established by legally sufficient, substantial evidence. *DLH*, 566 N.W.2d at 70–71 ("[T]he party resisting summary judgment must do more than rest on mere averments."). "In reviewing the record for the existence of a genuine issue of material fact, we view the evidence in the light most favorable to the party against whom summary judgment was granted." *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007) (quotation omitted). On review from summary judgment, all reasonable inferences favor the nonmoving party. *See City of Minneapolis v. Ames & Fischer Co.*, 724 N.W.2d 749, 756 (Minn. App. 2006) (citing *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993)).

At the summary-judgment stage, the nonmoving party need not prove each element, but must simply present admissible evidence that creates a genuine fact issue as to each of the essential elements. *Geist-Miller v. Mitchell*, 783 N.W.2d 197, 202 (Minn. App. 2010). "The purpose of summary judgment is to determine whether issues of fact exist, not to resolve issues of fact." *Fain v. Andersen*, 816 N.W.2d 696, 702 (Minn. App. 2012) (citing *Albright v. Henry*, 285 Minn. 452, 464, 174 N.W.2d 106, 113 (1970)),

8

*review granted and stayed* (Minn. Sept. 25, 2012), *stay vacated and review denied* (Minn. May 21, 2013).

### B. Innkeeper Liability

Bar owners owe their patrons a duty to "exercise reasonable care under the circumstances to protect their patrons from injury." *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn. 1986). When a bar owner is "aware of the violent nature of a person who frequents his premises, he has a duty to protect his patrons from the person." *Quinn v. Winkel's, Inc.*, 279 N.W.2d 65, 67 (Minn. 1979).

To establish a bar owner's liability for a patron's injuries, the injured patron must prove four elements: (1) the proprietor was on notice, from some act or threat, of the assailant's propensity for violence; (2) the proprietor had adequate opportunity to protect the injured patron; (3) the proprietor failed to take reasonable steps to protect the injured patron; and (4) the patron's injury was foreseeable. *Boone v. Martinez*, 567 N.W.2d 508, 510 (Minn. 1997). The foreseeability of a patron's injuries is a threshold issue. *Id.*

Notice is a prerequisite to foreseeability. *Id.* If a court concludes that the bar owner had no notice of an assailant's propensity for violence, the court must conclude that no duty to protect existed, because the assault would not have been foreseeable to a reasonable bar owner. *Alholm*, 394 N.W.2d at 491 n.5. In the absence of a legal duty, a negligence claim fails as a matter of law. *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999).

Two Minnesota Supreme Court cases elucidate the evidentiary support necessary for a plaintiff to successfully resist a summary-judgment motion in this context. In

*Boone v. Martinez*, the court found that one prior episode involving the same assailant that occurred outside the premises was insufficient to provide notice. 567 N.W.2d at 510–11. In *Quinn v. Winkel's, Inc.*, the court found that notice was established where bar staff had knowledge of more than one fight involving the assailant's brother and knowledge of the assailant's reputation for violence. 279 N.W.2d at 68.

Applying these principles here, we conclude that the admissible evidence creates a genuine issue of material fact as to whether the bar had adequate notice to warrant taking reasonable protective steps.

First, we attribute an agent's knowledge to the agent's principal if the agent learns the information in the course of the agency. *See Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 895–96 (Minn. 2006). Thus, we attribute the knowledge that Rustic Bar staff ejected Hagadorn, Huffman, and Lehet for fighting in October 2012 to Rustic Bar. Moreover, Flynn personally broke up a second fight involving Hagadorn, Huffman, and Ostrander around Labor Day 2013. Accordingly, we attribute knowledge of two previous violent altercations to Rustic Bar.

Second, additional evidence, considered in the light most favorable to Olson, also contributes to the establishment of notice. Evidence supports Olson's theory that Flynn simply refused to ban the women despite knowledge of their violent propensities. Flynn knew all of the women, who frequently patronized his bar. He also had social contact outside the bar with Hagadorn and Ostrander. Erin Johnson stated, and Patti Olson testified, that Flynn knew of the October 2012 fight resulting in Hagadorn, Huffman, and Lehet's ejection, yet chose not to ban them because they were good customers. Patti

10

Olson stated that several patrons complained to Jeff Flynn about the women's conduct, requesting that he hire a bouncer. From this information, a reasonable person could infer that Flynn, despite having notice of their past instigation of fights, chose for business and personal reasons to refrain from banning the women from the bar.

Finally, a veteran West Duluth bouncer testified that Hagadorn, Ostrander, Huffman, and Lehet had a reputation among bouncers for starting fights, and that at least three West Duluth bars had banned them for that behavior. One member of the group, Huffman, had a reputation as a trained kickboxer. While no evidence specifically showed that Rustic Bar employees knew of this reputation or bans from other bars, given the size of the community and Flynn's close personal contacts with at least two of the women,[3] a reasonable inference could be drawn that Rustic Bar knew this information about the women as well.

---

[3] The inclusion of these circumstances in the notice analysis is supported by deposition testimony, which is properly considered for summary-judgment purposes. *See* Minn. R. Civ. P. 56.03. Moreover, all reasonable inferences drawn from the evidence benefit the nonmoving party. *See Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 300–01 (Minn. 2014) (noting the role of reasonable inferences drawn from the evidence when no direct evidence of a disputed fact exists). Because these circumstances create a reasonable inference that Rustic Bar did, in fact, know of the women's reputation for starting fights, we consider that reasonable inference in Olson's favor. *See id.*

In sum, Olson has presented sufficient evidence to create a genuine issue of material fact regarding whether Rustic Bar had notice of the women's propensity for violence. Such notice, if established, gives rise to a duty to take reasonable steps to protect patrons from injury. We therefore reverse and remand this case for further proceedings consistent with this opinion.

**Reversed and remanded.**

**ROSS**, Judge (dissenting)

I believe that the district court carefully skimmed away the dross and, left only with the actual evidence, rightly declared appellant Franklin Olson's innkeeper-negligence case unfit for trial. The majority relies on the dross that the district court rejected, and it therefore reverses the district court's considered decision. I respectfully dissent and would readily affirm the district court because the relevant, admissible evidence supports the district court's summary judgment decision in favor of Rustic Bar.

The majority holds that the bar may be liable for injuries that appellant Olson suffered when he made his way into the fray of a violent bar fight involving the men accompanying the four women who had previously engaged in bullying conduct in the bar. The majority correctly observes that several assertions indicate that Rustic Bar had some notice of the allegedly thuggish women's thuggish propensities. But in the teeth of a summary judgment motion, the only assertions that any court is supposed to consider are those that are supported by actual, relevant, admissible evidence, not those that include conjecture, speculation, and innuendo—dross.

The majority highlights four circumstances that it says should have put the bar on notice of the women's "violent propensities" and led a reasonable bar owner to protect Olson from the injury he suffered, which the majority deems to have been foreseeable. A closer look first at the legal standard and then at the circumstances reveals why the district court correctly refused to include all of these circumstances when it considered summary judgment.

Although it is true that, as the majority points out, all doubts and factual inferences must be resolved against the moving party, *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn. 1981), the nonmoving party cannot avoid summary judgment by relying on "[m]ere speculation, without some concrete evidence." *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993). The majority's four circumstances are infected with some of this "mere speculation."

The majority first points to an October 2012 physical altercation at the bar involving the allegedly combative women, and one of them in particular. The undisputed evidence about that circumstance informs us that one of the women (Jen Hagadorn) pulled the hair of Olson's sister-in-law (Erin Johnson) and that Olson's wife (Patti Olson) immediately retaliated, pulling the aggressive woman's hair and dragging her to the ground. The two women tussled on the floor until bystanders pulled them apart and a bar employee ejected the physically aggressive woman and her two friends (Lori Lehet and Lisa Huffman). The initial hair-pulling is certainly evidence of incivility, but, as bar fights go, this event lacked the indicia of severity that would alert a reasonable bar owner that a violent episode with foreseeable serious injuries would occur unless everyone in the aggressive woman's group was forever excluded from the establishment.

The majority next highlights a second circumstance, which occurred almost a year after the first. It is the 2013 Labor Day incident that was, as the majority aptly calls it, "a pushing-and-shoving altercation" that bar owner (Jeff Flynn) witnessed. According to the only evidence offered about this incident, the pushing and shoving apparently occurred *among* the allegedly aggressive group members themselves, not between any of them and

some other patron. And even if this were not so, the pushing episode ended after the owner intervened and simply directed the women away from each other. This too was certainly no violent episode. So it would not alert any reasonable bar owner that he must take immediate and extraordinary steps to prevent these women from causing a violent and seriously injurious event.

During the entire 13-month period beginning in October 2012, taking the evidence in the light most favorable to the nonmoving party, the bar knew only of these two aggressive acts committed by someone in the company of the thuggish women—the one hair-pulling exchange involving Hagadorn and the one "pushing-and-shoving" incident apparently among the associated women. I think the majority fluffs the seriousness of the hair-pulling episode and the pushing-and-shoving episode by characterizing them as "two previous *violent* altercations." Rude? Uncivil? Yes. Violent? No. I think the district court more accurately implicitly considered the second incident to be, like the first, a "minor scuffle" that was "hardly a showing of a propensity for violence."

It is clear that these two episodes, however grandly they might be characterized, are insufficiently "violent" for notice to bind the case over for trial on Olson's innkeeper-liability theory. So the majority adds to them. It identifies a third circumstance, which it describes as "additional evidence" of the bar's notice that the women are dangerous. It references the first two minor scuffles and then opines that, because "Flynn knew all of the women" and "had social contact outside the bar" with two of them, a reasonable jury might infer that "for business and personal reasons" Flynn decided "to refrain from banning the women from the bar." The problem with this speculative reasoning about

Flynn's motives (besides being complete conjecture) is that Flynn's motive for not banning the women—*whatever* that motive was—is wholly irrelevant to whether the bar had notice of any genuinely violent propensity and to whether the women's past behavior made Olson's injury foreseeable. Unless Olson has pointed to evidence of the so-called violent propensities that made his serious injury foreseeable (and he has not), Flynn's motives are immaterial to the summary judgment analysis.

The majority speculates even further. It points to "a veteran West Duluth bouncer" and emphasizes his opinion that the allegedly thuggish women, one of whom "had a reputation" of participating in the sport of kickboxing, "had a reputation among bouncers for starting fights." The majority ignores the fact that the kickboxer never hit or kicked anyone or even pulled anyone's hair in the *only* previous "fight" involving the women at the bar (the hair-pulling episode). And equally dispositive, the majority expressly acknowledges that Olson presented "no evidence" that anyone employed by Rustic Bar (let alone any of the bar's principals) knew about this supposed reputation for starting fights. The majority then speculates without any apparent basis in the evidence that, "given the size of the community and Flynn's close personal contacts with at least two of the women, a reasonable inference could be drawn that Rustic Bar knew this [reputation] information about the women as well." But the record includes no evidence even suggesting that "the size of the community" would allow a fact-finder to conclude that Flynn knew about the group's supposed reputation for fighting. And even if it did, Olson presented no evidence that the kind of alleged reputed fighting involving the women was any more significant than the utterly insignificant hair-pulling and pushing-and-shoving

fights that Flynn already knew about. I stand with the majority in recognizing that there is absolutely "no evidence" of any connection between the bouncer's reputation opinion and Rustic Bar. This complete lack of evidence should end the analysis altogether, as it did in the district court, because assertions offered to oppose a summary judgment motion "must be such evidence as would be admissible at trial." *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.*, 474 N.W.2d 209, 212 (Minn. App. 1991) (citing *Murphy v. Country House, Inc.,* 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976)). It is easy to distinguish between the kind of admissible, "concrete evidence" necessary to defeat summary judgment and the inadmissible, "mere speculation" that the majority relies on to infer that Rustic Bar knew of the group's supposedly violent reputation.

As admissible evidence goes, all that Olson gave the district court were the single hair-pulling incident that went to an on-the-floor tussle after Olson's wife dragged the offending bully to the floor, and the single, quickly terminated pushing incident within the group of bullying women 11 months later. Olson points to no admissible evidence of any actually "violent propensities" or of any circumstances that would alert a reasonable bar owner that a patron would suffer serious injury because of the women. And the majority relies on the two pieces of "additional evidence" that, in my view, are partly inadmissible and otherwise irrelevant to prove the notice necessary to survive the summary judgment motion.

I think the district court rightly refused to inflate the minor evidence of uncivil, aggressive behavior by these women into evidence that could prevent summary judgment in favor of Rustic Bar on Olson's innkeeper-liability claim. I would affirm.